IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GEORGE B. STRASSBAUGH, JR.,

    Plaintiff(s),

v.

MUNICIPALITY OF MT. LEBANON,
PENNSYLVANIA OFFICER EDWARD
KRAPPWEISS individually, OFFICER
RICHARD PATRUS individually, OFFICER
JAMES HUGHES individually,

    Defendant(s).

07cv1442
**ELECTRONICALLY FILED**

## Memorandum Opinion

**I.    Introduction**

This is a civil rights action. Plaintiff, George Strassbaugh, Jr., alleges that he was arrested without probable cause, was searched unlawfully, and was maliciously prosecuted on simple assault charges and marijuana possession charges because his ex-wife, with whom he was involved in a contentious divorce, was an employee of Mt. Lebanon and was a "friend" of the Mt. Lebanon police officers. Plaintiff alleges that officers Edward Krappweiss, Richard Patrus and James Hughes, acting under color of state law pursuant to 42 U.S.C. § 1983, violated his constitutional rights under the First, Fourth and Fourteenth Amendments. Plaintiff also alleges that Mt. Lebanon is subject to municipal liability under Section 1983 for failing to properly train and supervise the officers. Currently pending before this Court is defendants' motion for summary judgment (doc. no. 43). After careful consideration of the motion, and responses in opposition thereto, this Court will grant summary judgment in part and will deny it in part.

## II. Factual Background

The Court has assimilated approximately 36 pages of joint material facts submitted by the parties and has gleaned the following factual background. Plaintiff and his ex-wife, Jacquelin Strassbaugh, and their three children, were longtime residents of Mt. Lebanon. Prior to the events in this case, plaintiff had never been charged, arrested or prosecuted of any criminal offense, and was involved in many community activities.

Plaintiff's ex-wife was employed by the Municipality of Mt. Lebanon. She had close personal ties with several Mt. Lebanon police officers and she had told many officers that she was contemplating a divorce from plaintiff. According to plaintiff, before the events in this case, when plaintiff complained about Ms. Strassbaugh's excessive involvement with the Mt. Lebanon police officers, Ms. Strassbaugh allegedly responded "they can't wait to get their hands on you."

On January 1, 2007, a few days after Ms. Strassbaugh had filed for divorce, she reported in person to the Mt. Lebanon police department (and her son accompanied her) to report an alleged incident of domestic abuse. She reported to Officer Edward Krappweiss (Krappweiss) that she had been injured by plaintiff when he allegedly grabbed her hand, resulting in a slight discoloration or bruise. Ms. Strassbaugh did not seek medical treatment for the injury, but, according to plaintiff, defendant Krappweiss recommended that she seek medical care "if she felt she had to." Ms. Strassbaugh took Tylenol before going to the police station, but did not report this fact to the officers.

Defendant Krappweiss took photographs of Ms. Strassbaugh's hand, and prepared an incident investigation report and affidavit of probable cause. Krappweiss did not interview Ms. Strassbaugh's son, who was also present at the police station, despite the fact that Ms.

Strassbaugh had claimed that he witnessed the incident. Although the affidavit of probable cause stated that her son was a witness to the incident, her son now claims that he did not witness the "assault" as alleged by defendant Krappweiss in the affidavit of probable cause.

Defendant Krappweiss then appeared at night court where he obtained a warrant for plaintiff's arrest, charging him with simple assault. Meanwhile, Ms. Strassbaugh obtained an emergency Protection From Abuse (PFA) against plaintiff, but there is no record of what information was supplied to the issuing authority for the PFA.

At the roll call for the second shift on January 1, 2007, Lt. Rooney, who was the Officer in Charge, announced the arrest warrant for plaintiff on charges of simple assault and he allegedly informed the officers that the victim of the simple assault was Ms. Strassbaugh, the fellow employee who worked in the Mt. Lebanon Recreation Department. Although not included in the arrest warrant, defendant Richard Patrus testified at his deposition that Lt. Rooney also provided a description of the vehicle operated by plaintiff and a physical description of plaintiff. At the deposition of Lt. Rooney, he denied making any statement about Ms. Strassbaugh's employment with Mt. Lebanon.

At approximately 17:30 hours on January 1, 2007, defendant Patrus, with backup provided by defendant James Hughes, served plaintiff with the arrest warrant issued earlier that day by night court. Plaintiff was arrested by defendant Patrus on the sidewalk in front of his home, a distance of approximately 100 feet from where plaintiff's vehicle was parked in his driveway. Plaintiff was arrested by Patrus along side of the police cruiser and was placed in handcuffs. After he was handcuffed, Patrus conducted a thorough pat-down search of plaintiff, which included removing a wallet, a cell phone, a pack of gum, and a set of car keys. Plaintiff

was then seat belted in the left hand back seat of the police cruiser. After plaintiff was placed in the patrol vehicle, defendant Hughes then arrived on the scene and upon his arrival, conducted a search of plaintiff's vehicle. While defendants maintain that the search was an "inventory search," plaintiff disagrees. Nonetheless, Hughes discontinued the search when plaintiff's son arrived on the scene and took possession of the vehicle.

Plaintiff was then transported by defendant Patrus to the Mt. Lebanon Police Department in the back seat of a Mt. Lebanon Police Department vehicle, and plaintiff was securely handcuffed behind his back, was seat belted during the transport, and was seated in the left rear back seat of the vehicle (behind defendant Patrus). In accordance with standard operating procedures, plaintiff should have been placed behind the passenger seat which would allow for "constant visual observation."

During plaintiff's processing, Patrus returned to the transport vehicle, which was parked in the Mt. Lebanon Police Department sallyport, to search the back seat area in accordance with the department policy. According to defendants, his search was also prompted by observations of excessive movement by plaintiff prior to and during the course of transport. However, despite Patrus' concerns regarding plaintiff's alleged excessive movements, he did not turn the video camera to the rear of the vehicle, nor did he activate it so as to record plaintiff's movement. Plaintiffs denies that he was excessively moving around during transport.

During the search of the police vehicle, defendant Patrus found a small baggie of marijuana on the right rear passenger side of the vehicle allegedly in plain view. Defendant Patrus then confronted plaintiff with the baggie of marijuana, and according to plaintiff, made a remark to the effect of "look what I found". Plaintiff reacted by denying the accusation that the

4

baggie was his property, specifically reminding Patrus that he had thoroughly searched him prior to the placing him into the transport vehicle. To which Patrus allegedly responded, "I guess I didn't do such a good job."

Plaintiff was then transported to the Allegheny County Jail for arraignment on the simple assault charges. He received a summons by mail for marijuana possession and possession of drug paraphernalia, and was required to sign a document regarding "conditions of bail release," acknowledging that he was arrested on the drug charges and that was required to report the Bureau of Criminal Identification, and failure to comply with this procedure would result in his arrest. Doc. No. 57-2.

On January 8, 2007, the parties entered into a consent order on the P.A. charges, and as part of this agreement, Ms. Strassbaugh agreed to take all steps to dismiss the simple assault case up to and including telling the District Attorney that she wants the simple assault charges dismissed and refusing to testify. The assault charges were ultimately dropped.

In January 2007, and following plaintiff's receipt of the summons, plaintiff again disclaimed any knowledge of the marijuana in the reports/complaints he made to the Municipal Manager of Mt. Lebanon, Steve Feller, and FBI Agent Larry Juliano.

Deputy Chief Gene Roach of the Mt. Lebanon Police Department then conducted an internal investigation, including questioning various police officers concerning plaintiff's complaint and reviewing the records of recent transports in said police vehicle.

The initial preliminary hearing on plaintiff's drug charges was scheduled for March 8, 2007, at which hearing plaintiff was present with his counsel. Defendant Patrus testified at the hearing in support of the misdemeanor simple possession and drug charges. The hearing,

however, was postponed because the Mt. Lebanon police department had not submitted and/or received the fingerprint analysis of the "baggie." The preliminary hearing was then rescheduled to May 31, 2007, and before the rescheduled hearing occurred, the drug charges were withdrawn. According to plaintiff, the preliminary hearing went forward, even though it was known by then that a known drug user and MLP drug informant (Kevin McCormick) had been recently transported in the subject vehicle, and had been charged on December 15, 2006 with simple assault and possession of a small amount of marijuana.

Mr. McCormick claimed that he placed a "baggie" containing marijuana under the front seat of the same police vehicle that transported plaintiff immediately prior to or during transport from the scene of his arrest to the Mt. Lebanon Police Department, and that he attempted to conceal the "baggie." While defendants allege that the subject vehicle was only used on one assignment between the McCormick transport and plaintiff's arrest (on December 27, 2006), plaintiff contends that the transport records show that the vehicle was used on two subsequent shifts on December 16, 2006 (the day of McCormick's arrest) as well as the shift on December 27, 2006.

According to Mt. Lebanon Police Department Policy, the transport vehicle should have been inspected at the beginning of each one of the shifts and at the end of each shift and before and after any transport of a prisoner. Nonetheless, the "baggie" was not discovered during any of the alleged searches, despite the fact that it was alleged to be in "plain view". According to defendants, prior to the start of Patrus' shift on January 1, 2007, he inspected the interior of the police vehicle as required by Mt. Lebanon Police Department policy. Plaintiffs argue that although purported policy requires the areas of the vehicle to be "thoroughly searched," there was

no requirement or policy that the areas under the seats had to be searched until April 2007, when Deputy Chief Roach issued a memo instructing officers to inspect that area.

### III. Summary Judgment Standards

"Rule 56 of the Federal Rules of Civil Procedure 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. Sch. Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), quoting *Foehl v. United States*, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof."), citing *Anderson* and *Celotex Corp.*.

In deciding a summary judgment motion, a court must view the facts in the light most favorable to, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party. *Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001); *Woodside*, 248 F.3d at 130; *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir. 1999). Further, the court must not

engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998), quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

IV.   Discussion

    A.   **Fourth Amendment - False Arrest/Malicious Prosecution/Unreasonable Search**

"The Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause." *Rogers v. Powell*, 120 F.3d 446, 452 (3d Cir. 1997). Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Rogers*, 120 F.3d at 453, *quoting Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). The Court of Appeals for the Third Circuit has stated that generally, the question of probable cause in a section 1983 damage suit is one for the jury. *Merkle v. Upper Dublin Sch. Dist.,* 211 F.3d 782, 788-89 (3d Cir. 2000). See also, *Losch v. Borough of Parkersburg*, 730 F.2d 903 (3d Cir. 1984). Furthermore, Fourth Amendment unlawful search and seizure claims require proof of an unconstitutional invasion of a plaintiff's "reasonable expectation of privacy," or a deprivation of his or her interest in property. *See Soldal v. Cook County,* 506 U.S. 56, 62-64 (U.S. 1992).

In order to prevail in a section 1983 malicious prosecution action, a plaintiff must show: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff

8

suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

After viewing the facts in the light most favorable to the non-moving party, the Court finds that there exists facts which preclude summary judgment on the issue of whether there was probable cause to arrest plaintiff on both the simple assault and the drug charges, and whether the subsequent search of plaintiff's vehicle constitutes an unconstitutional invasion of plaintiff's "reasonable expectation of privacy." Furthermore, plaintiff has presented sufficient evidence to support his claim for malicious prosecution against the individual officers. Accordingly, plaintiff's section 1983 claims against the individual officers for false arrest, malicious prosecution, and unreasonable search of his vehicle under the Fourth Amendment is DENIED.[1]

### B. First Amendment

The First Amendment prohibits government officials from taking retaliatory action against an individual for speaking out. *Hartman v. Moore*, 547 U.S. 250, 256 (U.S. 2006).

Plaintiff alleges that his First Amendment rights were violated because defendants conduct was motivated because plaintiff's ex- wife was a "friend" of the Police Department and because she was an employee of Mt. Lebanon and was a vocal public support of the police, she had a favored status. Plaintiff does not claim to be a member of any association or group, nor does he demonstrate that his freedom to associate has been impaired by the actions of the

---

[1] The Court finds that plaintiff has alleged sufficient facts to show that plaintiff suffered a seizure for purposes of a malicious prosecution claim. Defendants attempt to separate the two charges as separate incidents, but the Court finds that the simple assault and the drug charges were part of one ongoing incident, and can not be viewed in isolation. In any event, the Court finds that plaintiff suffered a deprivation of liberty consistent with the concept of a seizure as a result of the legal proceedings against him. Furthermore, defendants' assertion that the criminal proceedings did not terminate in plaintiff's favor, is also without merit.

9

defendants. Plaintiff has presented no evidence to support his conclusion that his First Amendment rights were violated and he fails to identify any protected activity under the First Amendment. The Court finds that plaintiff's theory that his ex-wife had a favored status is too attenuated to support a claim for violation of his First Amendment rights. Defendants' motion for summary judgment with regard to claims under the First Amendment will be GRANTED.

### C. Fourteenth Amendment

To the extent plaintiff brings a claim for violation of his Fourteenth Amendment rights under the Equal Protection Clause ("class of one") on the basis that he was treated more harshly because his wife was a "friend" of the police, this theory is also too attenuated to support any relief.

This Court previously set forth a discussion of the "class of one" theory in *Toth v. Bureau of Ambridge*, 2007 WL 776102 (W.D. Pa. 2007), which bears repeating:

> In *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), the Supreme Court held that single individuals or entities who are not alleged to be members of a protected class can bring an equal protection claim under a theory of "class of one." *Id*. at 564 (per curiam). "Class of one" equal protection claims require that "the individual plaintiff alleges intentional and disparate treatment compared to others similarly situated and that there is no rational basis for the difference in treatment." *Id. See also Strain v. Bor. of Sharpsburg*, 2006 WL 2087497, *5 (W.D.Pa 2006) (citations omitted) ("A plaintiff asserting a 'class of one' claim must show that: (1) defendants, acting under color of state law, intentionally treated plaintiff differently from others similarly situated; and there was no rational basis for the difference in treatment."); *Montanye v. Wissahickon School Dist.*, 327 F.Supp.2d 510 (E.D.Pa.2004) (numerous case omitted) ("to proceed on a 'class of one' theory in an equal protection claim, a plaintiff must allege sufficient facts demonstrating that: (1) defendants, acting under color of state law, intentionally treated plaintiff differently from others similarly situated and that (2) there is no rational basis for the difference in treatment.")

In this case, plaintiff has failed to identify any similarly situated individual that was treated differently by defendants, and the Court does not find that Mr. McCormick is a similarly situated individual simply because he was not charged with marijuana possession months after the police investigation determined it may have been his. Because plaintiff has not set forth any evidence from which a fact finder could find that he was treated differently from other similarly situated persons, his "class of one" Equal Protection claim must fail.[2] Defendants motion for summary judgment with respect to claims under the Fourteenth Amendment will be GRANTED.

### D. Qualified Immunity

The next question is whether defendants are entitled to qualified immunity. In analyzing qualified immunity claims for a police officer's violation of a constitutional right, the Court must apply a two-step inquiry. *Scott v. Harris*, --- U.S. ----, 127 S.Ct. 1769, 1774, 167 L.Ed.2d 686 (2007); *see also Saucier v. Katz*, 533 U.S. 194, 200-01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). In *Scott*, the United States Supreme Court set forth the first question: "'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.'" *Scott*, 127 S.Ct. at 1774 (quoting *Saucier*, 533 U.S. at 201). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established ... in light of the specific context of the case.'" *Id.*

After conducting the above analysis, this Court finds that the defendants are not entitled to qualified immunity for their alleged actions. When viewing the factual allegations in the light

---

[2]Plaintiff also may not properly assert a substantive due process claim under the Fourteenth Amendment to support his malicious prosecution claim. *Merkle v. Upper Dublin Sch. Distr.,* 211 F.3d 782, 792 (3d Cir. 2000)

11

most favorable to plaintiff, this Court cannot say as a matter of law that probable cause for the arrests existed. Obviously, if the plaintiff's version of the facts is believed, the jury could find that the arrests were made without probable cause, that he was subjected to an unlawful search, and that he was maliciously prosecuted.

E.     Municipal Liability Under Section 1983

In *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 689 (1978), the United States Supreme Court held that although municipalities and other local governmental bodies are "persons" within the meaning of section 1983, a municipality may not be held vicariously liable under section 1983 solely because of the existence of an employer-employee relationship with a tortfeasor. Instead,

> in *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that ***caused*** the plaintiff's injury. . . . . Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials ***whose acts may fairly be said to be those of the municipality***. *Monell, supra*, at 694, 98 S.Ct., at 2027. Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law. 436 U.S., at 690-691, 98 S.Ct., at 2035-2036 (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168, 90 S.Ct. 1598, 1613-1614, 26 L.Ed.2d 142 (1970)).
>
> \*   \*   \*
>
> As our § 1983 municipal liability jurisprudence illustrates, however, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  ***The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged***.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Board of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403-04 (1997).

In *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), the Court resolved a dispute amongst the Courts of Appeal and held that "the inadequacy of police training may serve as the basis for § 1983 liability *only where the failure to train amounts to deliberate indifference* to the rights of persons with whom the police come into contact." (emphasis added). The Court found this rule most consistent with its admonition in *Monell* that a municipality can be liable under § 1983 only if its policies are the moving force behind the constitutional violation. "Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983." *City of Canton*, 489 U.S. at 389.

The Court of Appeals for the Third Circuit explained in *Beck v. City of Pittsburgh,* 89 F.3d 966, 971-72 (3d Cir. 1996):

> When a suit against a municipality is based on § 1983, the municipality can ***only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom***. *Monell* . . . Thus, although the municipality may not be held liable for a constitutional tort under § 1983 on the theory of vicarious liability, it can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom. . . .
>
> The Court's holding and reasoning in *Monell* have created a two-path track to municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom. . . . In *Andrews* [*v. City of Philadelphia*, 895 F.2d 1469 (3d Cir.1990)] this court articulated the distinctions between these two sources of liability:
>
> > A government policy or custom can be established in two ways. Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized

by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

895 F.2d at 1480 (citations omitted); *see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir.1990) (same). Custom, on which the plaintiff relies in this case, may also be established by evidence of knowledge and acquiescence. *See Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir.1989), *cert. denied*, 492 U.S. 919, 109 S.Ct. 3244, 106 L.Ed.2d 591 (1989).

Moreover, a plaintiff must show not only an unlawful policy or custom of the municipality, he or she must also establish that such policy or custom was the proximate cause of the injuries sustained, by showing a plausible nexus or affirmative link between the alleged policy or custom and the injuries. *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996).

In support of his claim for municipal liability on a failure to train analysis, plaintiff has set forth evidence that some of the officers were unclear on the issue of what constitutes an "injury" for simple assault purposes and some officers seemed to believe there was a distinction between domestic violence cases and the typical simple assault case. Plaintiff also argues that Mt. Lebanon has an arrest policy for possession of marijuana applicable to persons transported in Mt. Lebanon vehicles when contraband was found subsequent to such transport, even though it allegedly did not require its officers to inspect those areas prior to the use of its vehicles. According to plaintiff, the policies and customs adopted by the Municipality of Mt. Lebanon with regard to searches and arrests in this regard has resulted in constitutional violations.

Even when viewing the above facts in the light most favorable to the plaintiff, this Court does not find these facts to be sufficient to set forth a claim for municipal liability. In essence, the claims that the municipality did not properly train its officers on simple assault determinations, or that the policies, practices or customs for searching the patrol vehicles were

inadequate, do not come rise to the level of deliberate indifference to the rights of its inhabitants. The Municipality of Mt. Lebanon may not be held liable for the unconstitutional acts of its employees on a theory of respondeat superior, *Berg v. County of Allegheny*, 219 F.3d 261 (3d Cir. 2000), and there is simply no evidence to support the conclusion that the municipality was the "moving force" behind the injury alleged. Instead, the most that plaintiff can show with regard to the policies or customs of the Municipality is negligence, and "a showing of simple or even heightened negligence will not suffice" *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Defendants' motion for summary judgment with respect to claims against the Municipality of Mt. Lebanon will be GRANTED.

## V. Conclusion

For the reasons set forth hereinabove, this Court finds that issues of fact preclude summary judgment and will DENY defendants' motion for summary judgment as to the claims under the Fourth Amendment for false arrest, malicious prosecution and unlawful search. This Court will GRANT defendants' motion for summary judgment as to the claims brought pursuant to the First Amendment and the Fourteenth Amendment and all claims against the Municipality of Mt. Lebanon.[3]

---

[3]Plaintiff appears to have dropped his remaining state law claims and therefore, the Court will not address defendants' arguments in this regard.

An appropriate order follows.

SO ORDERED this 10th day of October, 2008.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge